WO

NOT FOR PUBLICATION

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| American Civil Liberties Union of Arizona,<br><br>Plaintiff,<br><br>v.<br><br>United States Department of Homeland Security, et al.,<br><br>Defendants. | No. CV-17-01083-PHX-DJH<br><br>**ORDER** |

Pending before the Court is the Motion for Award of Attorneys' Fees Pursuant to 5 U.S.C. § 552(a)(4)(E) filed by Plaintiff American Civil Liberties Union of Arizona (Doc. 71).[1] In this Freedom of Information Act ("FOIA") matter, Plaintiff is requesting attorneys' fees in the amount of $88,889.30 and costs in the amount of $400.00 on the basis that Plaintiff "substantially prevailed in this action to secure public access to government records." (Doc. 71 at 1). Defendants, United States Department of Homeland Security and United States Customs and Border Protection (collectively "Defendants"), filed an Opposition (Doc. 74), and Plaintiff filed a Reply (Doc. 79).

**I.    Background**

Plaintiff, the American Civil Liberties Union of Arizona ("ACLU") filed this FOIA action on April 12, 2017. (Doc. 1). The ACLU is a non-profit, 501(c)(3) organization that, according to its Complaint, "educates the public about the civil liberties implications of

---

[1] Plaintiff requested oral argument in this matter. The Court finds that the issues have been fully briefed and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b) (court may decide motions without oral hearings); LRCiv 7.2(f) (same).

pending and proposed state and federal legislation, provides analysis of pending and proposed legislation, directly lobbies legislators, and mobilizes its members to lobby their legislators." (Doc. 1 at ¶ 15; *see also* Doc. 71-2 at 1).

Plaintiff initiated this action following a February 2, 2017, FOIA request that Plaintiff submitted to Defendants. (Doc. 1 at ¶ 1). The FOIA request sought records concerning the United States Customs and Border Protection's ("CBP") local implementation of President Trump's January 27, 2017, Executive Order, titled "Protecting the Nation from Foreign Terrorist Entry Into the United States," as well as other judicial orders or directives regarding that Executive Order, including President Trump's March 6, 2017, Executive Order, which was identically titled (the "Executive Orders"). (Doc. 1 at ¶ 2; Doc. 1-1).

Plaintiff filed a Motion for Order Setting Schedule for Production of Responsive Documents on December 13, 2017. (Doc. 39). In that Motion, Plaintiff requested that the Court enter an order directing Defendants to begin producing records responsive to the FOIA request at the rate of 1,000 pages per month. (Doc. 39 at 4). In response, Defendants stated that, while they had no objection to a production schedule, Plaintiff's proposed schedule would not be "feasible" because Defendants' resources were "monopolized" through the end of February. (Doc. 42 at 2). Accordingly, Defendants suggested that it should produce 200 pages of records by February 28, 2018, and thereafter produce records on a "rolling basis at rates that will significantly increase." (Doc. 42 at 2). In its January 10, 2018, Reply, Plaintiff requested that Defendants begin producing responsive documents in bi-monthly productions of at least 200 documents per production. (Doc. 44 at 6). On May 21, 2018, this Court issued an Order to Show Cause regarding the number of pages per month the Defendants could produce and ordering Defendants to show cause as to why the Court should not order Defendants to produce documents at a rate of 1,000 pages per month. (Doc. 46).

On May 29, 2018, the parties submitted a Joint Status Report (Doc. 47). The Joint Status Report indicated that Defendants had produced 611 pages that Defendants

contended were responsive to the FOIA request. (Doc. 47 at 2). The Joint Status Report also stated that the Defendants' average processing rate since January 1, 2018, had been approximately 581 pages per month. (Doc. 47 at 3). Finally, Defendants estimated that they had not yet processed 2241 pages of potentially responsive documents and stated that they proposed a processing schedule under which production would be complete by November 30, 2018. (*Id.*). Last, the Joint Status Report indicated that Plaintiff intended to file a Motion for an order directing Defendants to produce a *Vaughn* Index. (*Id.*).

On May 31, 2018, Defendants responded to the Court's May 21, 2018, Order to Show Cause. (Doc. 48). In their Response, Defendants presented its proposed schedule for completing the processing of the remaining 2,241 potentially responsive pages. (Doc. 48 at 2). That schedule provided that Defendants would process at least 500 pages of the remaining 2,241 pages by June 30; at least 1000 pages of the remaining 2,241 pages by August 31; at least 2,129 pages of the remaining 2,241 pages by October 31; and all 2,241 pages by November 30, 2018. (Doc. 48 at 2). By Order dated June 5, 2018, the Court found that this proposed schedule was reasonable and ordered Defendants to process the remaining documents pursuant to that schedule. (Doc. 49 at 2; Doc. 53).

On June 13, 2018, Plaintiff filed a Motion requesting an Order directing Defendants to produce a *Vaughn* Index. (Doc. 50). Defendants filed an Opposition to this Motion, arguing that the Motion was premature (Doc. 54), and Plaintiff submitted a Reply, disputing the claim of premature filing. (Doc. 57). On October 18, 2018, this Court denied the Motion without prejudice. (Doc. 58). The Court held that it did not need to reach the merits of Plaintiff's Motion because the processing schedule for the FOIA request was already in place. (Doc. 58 at 2).

On December 4, 2018, Defendants filed a Status Report stating that the processing of all potentially responsive documents was completed on October 31, 2018. (Doc. 59). On February 8, 2019, the parties filed a Joint Status Report, indicating that the parties had consulted with each other and that no dispositive motions would be filed. (Doc. 64). On May 24, 2019, Plaintiff filed this Motion for Attorneys' Fees (Doc. 71). Defendants filed

a Response in Opposition to the Motion for Attorneys' Fees (Doc. 74), and Plaintiff filed a Reply (Doc. 79).

**II.     Discussion**

Under the Freedom of Information Act ("FOIA"), if a complainant has "substantially prevailed," the court "may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred." 5 U.S.C. § 552(a)(4)(E)(i). "[A] complainant has substantially prevailed if the complainant has obtained relief through either (1) a judicial order, or an enforceable written agreement or consent decree; or (2) a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." 5 U.S.C. § 552(a)(4)(E)(ii). The Court does not automatically award costs and fees to the prevailing party in a FOIA action. *Rosenfeld v. U.S. Dep't of Justice*, 904 F. Supp. 2d 988, 994 (N.D. Cal. 2012) (citing *Church of Scientology v. U.S. Postal Serv.*, 700 F.2d 486, 489 (9th Cir. 1983)). Instead, the plaintiff must present "convincing evidence" that it is both eligible for an attorneys' fee award and entitled to an attorneys' fee award. *Church of Scientology*, 700 F.2d at 489. Once the plaintiff has established eligibility for and entitlement to fees, the plaintiff submits its bill to the court, and the court evaluates the bill for reasonableness of the hours expended and the hourly fee claimed. *Long v. U.S. Internal Revenue Serv.*, 932 F.2d 1309, 1313-14 (9th Cir. 1991).

**A.     Eligibility and Entitlement**

To establish eligibility for an attorneys' fee award, the moving party must show that: "(1) the filing of the action could reasonably have been regarded as *necessary* to obtain the information," and "(2) the filing of the action had a *substantial causative* effect on the delivery of the information." *Church of Scientology*, 700 F.2d at 489 (emphasis in original). If the party establishes eligibility for an attorneys' fee award, the court must then determine whether the party is entitled to an attorneys' fee award. *Hiken v. Dep't of Defense*. 836 F.3d 1037, 1043-44 (9th Cir. 2016). This decision is within the trial court's discretion. *Id.* at 1044. In exercising this discretion, the trial court considers four factors: "(1) the public benefit from disclosure, (2) any commercial benefit to the plaintiff resulting

from disclosure, (3) the nature of the plaintiff's interest in the disclosed records, and (4) whether the government's withholding of the records had a reasonable basis in law." *Long*, 932 F.2d at 1313.

Defendants concede that Plaintiff is eligible for a fee award. (Doc. 74 at 9 (stating "Defendants do not contend here that Plaintiff is not *eligible* for fees")). This Court agrees with the parties that the filing of the action could reasonably have been regarded as necessary to obtain the information and that the filing of the action had a substantial causative effect on the delivery of the information. Accordingly, the Court finds that the eligibility requirement has been satisfied.

Regarding entitlement, Defendants contend that Plaintiff is not entitled to fees because there was no public benefit. Defendants assert that there was no public benefit because there were no affected travelers who passed through the Phoenix airport during the time in question and because there were no materials specific to the Customs and Border Protection Field Office regarding "enforcement of the Executive Order as it pertained to specific individuals or specific circumstances." (Doc. 74 at 10-11). Defendants further argue that there was little public benefit due to the multiple similar lawsuits throughout the country and the many more pages produced in those other actions. (*Id.*). In response, Plaintiff argues that the documents received "contribute to the public's ability to make an informed judgment as to the government's actions." (Doc. 79 at 3). Plaintiff further explains that, regardless of the lack of travelers through the Phoenix airport, information was disclosed that assists the citizenry in understanding "important governmental operations."[2] (Doc. 79 at 4).

In addressing the public benefit factor, Defendants correctly state that one consideration is the degree of dissemination of the information and the likely public impact that might result from disclosure. *Church of Scientology*, 700 F.2d at 493. The public

---

[2] In support of this contention, Plaintiff cites, for example, an email in which the Customs and Border Protection Executive Assistant Commissioner wrote to various recipients, including the Tucson Field Office, regarding the potential for certain members of Congress to visit airports seeking information regarding the first Executive Order and recommending a policy of non-engagement.

benefit factor, however, may also be met "[e]ven where the degree of dissemination is limited, or where the level of public interest in the requested information itself is minimal." *Public.Resource.org v. U.S. Internal Revenue Serv.*, 2015 WL 9987018, at *3 (N.D. Cal. 2015); *see also Sierra Club v. U.S. Envtl. Prot. Agency*, 75 F. Supp. 3d 1125, 1143-44 (N.D. Cal. 2014) (finding public benefit when documents were not disseminated because the data plaintiffs obtained was being used to "inform Plaintiffs' ongoing oversight and enforcement efforts"). In determining whether the public benefit factor is met, the court should assess "the potential public value of the information *sought*, and not the public value of the information received." *Civil Beat Law Center for the Public Interest, Inc. v. Centers for Disease Control and Prevention*, 2017 WL 664446, at *6 (D. Haw. 2017) (emphasis added) (internal quotations omitted). This "potential public value" is present when there is "at least a modest probability of generating useful new information about a matter of public concern." *Morley v. Central Intelligence Agency*, 810 F.3d 841, 844 (D.C. Cir. 2016). An additional goal of the public benefit analysis is to ensure that a fee award is not used to subsidize "a matter of private concern." *Church of Scientology*, 700 F.2d at 493.

There was a public benefit in this case. Plaintiff is a non-profit organization that, according to the Complaint, "educates the public about the civil liberties implications of pending and proposed state and federal legislation, provides analysis of pending and proposed legislation, directly lobbies legislators, and mobilizes its members to lobby their legislators." (Doc. 1 at ¶ 15). There is no suggestion that Plaintiff used its FOIA request to subsidize a matter of private concern. Further, even if the documents Plaintiff received were not widely disseminated to the public, the information sought had public value. The Executive Orders were widely reported and were subject to public protests. The information sought by Plaintiff was valuable because it could provide further information regarding the implementation and practical impact of the Executive Orders. Therefore, the information sought had "at least a modest probability of generating useful new information about a matter of public concern." *See Morley*, 810 F.3d at 844. The Court thus finds that the public benefit factor is met.

Defendants do not contend that the remaining factors are not met, and the Court agrees that the factors support an award of attorneys' fees. First, Plaintiff did not secure a commercial benefit from disclosure; as discussed above, Plaintiff is a non-profit organization that focuses on the civil liberties implications of legislation and proposed legislation. Likewise, because Plaintiff sought the documents in order to inform the public regarding the Executive Orders, Plaintiff's interest in the disclosed records also supports a finding of eligibility for fees. *See Church of Scientology,* 700 F.2d at 494 (stating that, if the plaintiff "is indigent or a nonprofit public interest group, an award of attorney's fees furthers the FOIA policy of expanding access to government information"). Finally, the Court finds that there was no reasonable basis in law for the government's withholding of the records. Therefore, because all four factors are met, Plaintiff is entitled to an award of attorneys' fees, in addition to being eligible for a fee award.

### B. Reasonableness of the Fees Requested

Once a plaintiff has established both eligibility for and entitlement to fees, the plaintiff must submit a record of its fees to the court so that the court can examine the reasonableness of both the hourly fee claimed and the number of hours expended. *Long*, 932 F.2d at 1314. If the two figures are reasonable, "then there is a strong presumption that their product, the lodestar figure, represents a reasonable award." *Id.* (internal quotations omitted). The fee applicant must produce evidence that the requested rates "are in line with those prevailing in the community." *Hiken*, 836 F.3d at 1044. Sufficient evidence typically includes affidavits of the moving party's attorney and other attorneys regarding fees in the community. *Id.* Regarding the number of hours expended, the moving party must "document[] the appropriate hours expended" and must "submit evidence supporting the hours worked." *Sierra Club*, 75 F. Supp. 3d at 1148 (internal citations omitted).

#### 1. Hourly Rates

Defendants assert that Plaintiff is seeking fees based upon "unreasonably high hourly rates that are not in line with rates prevailing in the community for similar work."

(Doc. 74 at 19). Defendants specifically point to Mr. Bodney's hourly rate of between $675 and $710 and Mr. DiGiacomo's hourly rate of between $310 and $375. (*Id.*). In response, Plaintiff states that Mr. Bodney's rate is reflective of his "nearly 40 years of experience since graduating from the University of Virginia School of Law." (Doc. 71 at 12). Likewise, Plaintiff states that Mr. DiGiacomo's hourly rate reflects his five years of civil litigation experience. (*Id.*). In support of Plaintiff's attorneys' fees claim, Plaintiff attaches Mr. Bodney's Declaration. (Doc. 71-1). In that Declaration, Mr. Bodney states that the hourly rates charged are "the same as, or lower than, the prevailing rates charged by comparable law firms in the community for similar services." (Doc. 71-1 at 3). Mr. Bodney declares that he bases this statement on his personal experience, including previously serving as the Managing Partner of the Phoenix office of Steptoe & Johnson, LLP, previously reviewing billing rate information for firms in the metropolitan Phoenix area, and having served as an expert witness in connection with another firm's FOIA fee application. (Doc. 71-1 at 3).

In determining a reasonable hourly rate, courts consider "the prevailing market rate in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Rosenfeld*, 904 F. Supp. 2d at 1001. The Court should also consider evidence, including declarations "of the plaintiffs' attorney" regarding prevailing fees. *Id.* The Court finds that Mr. Bodney's many years of legal experience and his legal expertise, in addition to his Declaration attesting that the rate claimed is the same as or lower than prevailing rates in the Phoenix legal community for similar services, is sufficient evidence that his claimed hourly rate is reasonable. The evidence also establishes the reasonableness of Mr. DiGiacomo's hourly rate, based on Mr. DiGiacomo's experience.

Defendants do not contest the reasonableness of the hourly rates claimed for the work of two paralegals who assisted Mr. Bodney, Susan Brady Pearce and Tasha M. Hart. In his Declaration, Mr. Bodney states; "Both Ms. Brady Pearce (with whom I have worked for over 20 years) and Ms. Hart have extensive litigation experience and assisted

throughout this litigation." (Doc. 71-1 at 3). Mr. Bodney also attests that their hourly rates are comparable to those in the community for similar services. (Doc. 71-1 at 3). The Court agrees and finds that there is sufficient evidence to support the stated hourly rates of $185-$195 for Ms. Brady Pearce and of $160-$195 for Ms. Hart.

Defendants similarly do not object to the hourly rates requested for work performed by Ms. Kathleen E. Brody, Plaintiff's Legal Director; Plaintiff's staff attorney, Mr. William P. Peard; or Plaintiff's paralegal, Ms. Gloria Torres. Ms. Brody's Declaration states that she is personally familiar with the billing practices and rates of attorneys in the Phoenix market. (Doc. 71-2 at 2). She also attests that her hourly rate for this matter ranged between $361 and $382. (Doc. 71-2 at 3). She further notes that she has previously been awarded fees at the hourly rates of $350 and $361. (*Id.*). Regarding Mr. Peard, whose hourly rate ranged from $245 to $260, Ms. Brody states that he received his Juris Doctor in 2013 and previously worked as a staff attorney for Massachusetts legal aid and for the Georgia Legal Services Program. (*Id.*). Regarding Ms. Torres, whose billable rate in this matter was $191, Ms. Brody states that she has worked as a paralegal and legal administrator in Phoenix for more than 20 years and that she has previously been awarded fees at a rate of $185 and $191. (Doc. 71-2 at 4). Upon reviewing Ms. Brody's Declaration, the Court finds that there is sufficient evidence to establish the reasonableness of the requested rates, based upon years of experience, as well as prior fee awards in comparable cases. (Doc. 71-2).

2. Hours Requested

In analyzing the number of hours requested, "the Court has discretion in determining the number of hours reasonably expended on this case." *Rosenfeld*, 904 F. Supp. 2d at 1003. The fee applicant must document the "appropriate hours expended" and must "submit evidence supporting the hours worked." *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983). "Where the documentation of hours is inadequate, the district court may reduce an award accordingly." *Id.* If the court finds that time was not "reasonably expended," the court should exclude that time from a fee award. *Sierra Club*, 75 F. Supp. 3d at 1148

(citing *Hensley*, 461 U.S. at 433).

In Defendants' Response, Defendants assert that several categories of requested fees are not recoverable. These include fees for billing entries that are "either redacted or otherwise too brief to establish their relationship to this case" (Doc. 74 at 13); fees for attorneys consulting with each other (Doc. 74 at 15); and fees for time spent on "Plaintiff's unsuccessful and unnecessary motion for a *Vaughn* index." (Doc. 74 at 17). In Reply, Plaintiff states that the billing entries were "appropriately redacted to protect both the attorney-client privilege and work product information." (Doc. 79 at 5). Plaintiff also states that the time was not excessive; for example, Mr. Bodney billed just over 40 hours on the matter, while Mr. DiGiacomo billed an average of 5.6 hours per month. (Doc. 79 at 6). Finally, regarding the Motion for *Vaughn* index, Plaintiff states that it prepared the motion "more than seven months *after* serving the FOIA Request, at a time when Defendants were only slowly producing sometimes heavily-redacted documents." (Doc. 79 at 7 (emphasis in original)).

First, regarding the "redacted" time entries, the Court appreciates the importance of maintaining attorney-client confidentiality and work-product privilege; therefore, the Court will award fees for attorney-client communications and communications between co-counsel, even when the specific contents of those communications are not stated. If, however, insufficient information is provided for the Court to determine whether a time-entry was necessary for this action, the Court will decline to award the claimed fees. *See Rosenfeld*, 904 F. Supp. 2d at 1003 ("The fee applicant bears the burden of 'documenting the appropriate hours expended'" (citing *Hensley,* 461 U.S. at 433)). Additionally, if such entries were block-billed, the Court will not award any of the claimed fees for that billable entry. *See Civil Beat Law Center*, 2017 WL 664446, at *12 ("District courts have the authority to reduce hours that are billed in block format"). Accordingly, the Court will exclude the following entries, which provide insufficient information regarding the work performed[3]:

---

[3] The time entries refer to those in Doc. 79-6 at 1-18 and Doc. 71-2 at 6-11.

| Date | Attorney | Description | Hours | Amount |
|---|---|---|---|---|
| 4/10/17 | DiGiacomo | Review Correspondence from K. Brody and REDACTED | .5 | $155 |
| 4/11/17 | Bodney | Review REDACTED | .1 | $67.50 |
| 4/11/17 | DiGiacomo | Review correspondence from K. Brody analyze issues raised re: REDACTED | .3 | $93 |
| 4/14/17 | DiGiacomo | Research REDACTED | .2 | $62 |
| 5/12/17 | DiGiacomo | Review and respond to correspondence from M. Ebadolahi[4] re REDACTED | .2 | $62 |
| 5/16/17 | DiGiacomo | Review and analyze correspondence from M. Ebadolahi re REDACTED | .2 | $62 |
| 5/22/17 | DiGiacomo | Incorporate REDACTED | .4 | $124 |
| 5/22/17 | DiGiacomo | Review correspondence re REDACTED | .2 | $62 |
| 5/25/17 | DiGiacomo | Review and analyze correspondence from M. Ebadolahi re REDACTED | .3 | $93 |
| 5/31/17 | Bodney | Review emails re REDACTED | .2 | $135 |
| 6/22/17 | DiGiacomo | Review and analyze decisions re motion for stay pending JPML decision; REDACTED | 1.6 | $496 |
| 6/30/17 | DiGiacomo | Review and analyze correspondence re REDACTED | .1 | $31 |
| 8/4/17 | Bodney | Teleconference with T. Burke re REDACTED | .5 | $337.50 |
| 8/4/17 | DiGiacomo | Analyze REDACTED with D. Bodney and K. Brody | .5 | $155 |
| 8/4/17 | DiGiacomo | Draft and send REDACTED to B. Peard and K. Brody | .3 | $93 |
| 11/1/17 | DiGiacomo | Analyze issues re REDACTED with D. Bodney | .3 | $93 |
| 12/8/17 | DiGiacomo | Review correspondence from M. Ebadolahi re REDACTED | .4 | $124 |
| 12/13/17 | DiGiacomo | Review filed motion for entry of production schedule; REDACTED | .2 | $62 |
| 1/3/18 | DiGiacomo | Analysis and correspondence REDACTED | .9 | $310.50 |
| 1/24/18 | DiGiacomo | Review correspondence from M. Ebadolahi REDACTED | .1 | $34.50 |
| 2/7/18 | DiGiacomo | Review and analyze correspondence from M. Ebadolahi re REDACTED | .2 | $69 |
| 5/14/18 | Peard | Reviewing and analyzing REDACTED | 2.8 | $705.60 |
| 5/18/19 | DiGiacomo | Analyze REDACTED | .3 | $103.50 |
| 6/22/18 | DiGiacomo | REDACTED | .1 | $34.50 |
| 8/9/18 | DiGiacomo | Draft and circulate summary of REDACTED; review correspondence from REDACTED | .8 | $276 |
| 11/26/18 | Bodney | Review email re REDACTED | .1 | $68.50 |
| 2/14/19 | DiGiacomo | REDACTED | .1 | $37.50 |
| | | **TOTAL** | | $3946.60 |

---

[4] Because Plaintiff has not clarified the relationship of M. Ebadolahi or T. Burke to this matter, the Court does not have sufficient information to award fees for redacted communications with M. Ebadolahi and T. Burke.

Regarding fees for attorneys consulting with each other, Defendants argue that Plaintiff's attorneys are claiming an excessive amount of fees for communications both between the attorneys at the law firm of Ballard Spahr and between Ballard Spahr attorneys and Plaintiff's in-house attorneys. Plaintiff requests $20,770.80, based upon 43.4 hours, for assorted communications between co-counsel, including telephone conferences, e-mail correspondence, and in-person conferences. This amount is slightly more than 23% of the total fees requested. Although conferences between attorneys to discuss and strategize are an important aspect of effective litigation, *see McKenzie v. Kennickell*, 645 F. Supp. 437, 450 (D.D.C. 1986), the party seeking fees must establish that the communications were efficient and essential. *Fresh Packing Corp. v. Guicho*, 2016 WL 1718286, at *7 (N.D. Cal. 2016); *see also Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 949 (9th Cir. 2007) (affirming reduction in fees for intra-office conferences when fee claimant failed to provide a "persuasive justification" for the conferences). The Court first notes that this FOIA matter was not particularly complex; although there was an initial motion to stay, this matter was resolved with a production schedule. Further, upon review of the billing entries, there are a number of duplicative and inconsistent entries.[5] In light of the duplicative and inconsistent entries, as well as the relative lack of complexity of this matter, the Court finds that Plaintiff has not established that the substantial time spent on counsel communications was efficient and essential. *See Cruz v. Starbucks Corp.*, 2013 WL 2447862, at *8 (N.D. Cal. 2014) (reducing time for conferencing when over 20% of counsel time was spent in conferences with co-counsel); *Clark v. Marsh*, 609 F. Supp. 1028, 1034-35 (D.C. Cir.

---

[5] For example, on November 7, 2017, there was a phone call between Mr. DiGiacomo, Mr. Peard, and Ms. Brody. Mr. DiGiacomo billed .6, for a fee of $186; Mr. Peard and Ms. Brody each billed .4, for fees of $98 and $144.40. Similarly, on August 3, 2017, Mr. Bodney and Mr. DiGiacomo apparently conferenced each other; however, Mr. DiGiacomo recorded .7 for the conference, at a fee of $217, while Mr. Bodney recorded .1 for the conference, at a fee of $67.50. Still other conferencing entries do not have matching entries between counsel, such as a May 8, 2017, entry by Mr. Bodney, billing .2 and $135 for a conference with Mr. DiGiacomo, but without a corresponding time entry by Mr. DiGiacomo. The Court is troubled by these inconsistencies. *See Rodriguez v. Barrita, Inc.*, (reducing uncorroborated conferencing time because, although there is no suggestion of billing impropriety, party requesting fees failed to meet its burden of demonstrating entitlement to all requested fees).

1985) (finding 38.8 hours, or "almost one full work week" an excessive amount of time for communications between attorney and client"). Accordingly, the Court will reduce that time by 15%, resulting in a deduction of $3,027.80.[6]

Finally, Defendants assert that Plaintiff should not recover fees related to preparing the Motion for *Vaughn* Index, which this Court denied without prejudice because the processing schedule for the FOIA request was already in place. (Doc. 58 at 2). As this Court noted in its Order denying the Motion, case law indicates that, where a *Vaughn* Index is appropriate, it is usually appropriate at the summary judgment stage. (*Id.*). Nonetheless, almost immediately after this Court issued its Order approving the production schedule, Plaintiff began preparing the Motion for *Vaughn* Index. Because the Motion was premature and unnecessary, the Court declines to award attorneys' fees associated with that Motion, resulting in a deduction from the fees requested of $4,986.10.

### III. Conclusion

In this FOIA matter, Plaintiff is requesting $88,889.30 in attorneys' fees and $400 in costs. Plaintiff is both eligible for and entitled to fees. After careful review of Plaintiff's billing records, and having adjusted the amounts claimed as appropriate and as explained above, the Court awards Plaintiff $76,928.80 in attorneys' fees. Accordingly,

**IT IS ORDERED granting** Plaintiff's Motion for Award of Attorneys' Fees Pursuant to 5 U.S.C. § 552(a)(4)(E) (Doc. 71) and awarding Plaintiff attorneys' fees in the amount of $76,928.80 and costs in the amount of $400.

Dated this 27th day of March, 2020.

Honorable Diane J. Humetewa
United States District Judge

---

[6] This amount is 15% of $20,185.30, which represents the $20,770.80 requested for fees for attorney communications less amounts already subtracted based upon "redacted" time entries, as detailed above.